

NUMBER 13-14-00617-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

RONALD G. HOLE,                                                    Appellant,

v.

WILLIAM L. HUBBARD,                                               Appellee.

On appeal from the 94th District Court
of Nueces County, Texas.

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Perkes
Memorandum Opinion by Chief Justice Valdez

Appellant, Ronald G. Hole, appeals from the trial court's grant of summary judgment in favor of appellee, William L. Hubbard.[1]  By two issues, Hole contends that the trial court should have denied appellee's motion for summary judgment and granted his motion for partial summary judgment.  We affirm.

---

[1] Cheryl D. Hole, Hole's wife, also filed suit.  However, she is not a party on appeal.

## I.    BACKGROUND

According to Hole, "[o]n or about March 7, 2013," appellee sent a letter to an attorney, William Gault, requesting his "assistance in preventing [Hole] from filing a lawsuit against [a]ppellee." In this letter, appellee stated, "as shown by the Supreme Court opinion, [Hole] has no aversion to filing suit without merit." Claiming that this statement constituted defamation per se, Hole sued appellee. Hole also sued appellee for his alleged violation of Chapter 12 of the Texas Civil Practice and Remedies Code.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002 (West, Westlaw through 2015 R.S.). Appellee moved for partial summary judgment alleging that absolute privilege barred Hole's defamation cause of action.[3] Hole moved for partial summary judgment on the basis that there was no genuine issue of material fact regarding any of appellee's affirmative defenses and on the basis that appellee's comments amounted to libel per se. Appellee responded to Hole's motion claiming that absolute privilege applied. The trial court denied Hole's motion and granted appellee's motion.[4] This appeal followed.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

We review the granting of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100

---

[2] Hole claimed that appellee violated Chapter 12 after appellee requested two abstract of judgment liens on behalf of one of his clients. Hole asserted that the liens were fraudulent. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002 (West, Westlaw through Ch. 46, 2015 R.S.).

[3] Although appellee filed a motion for partial summary judgment, Hole nonsuited his remaining Chapter 12 claim against appellee. Thus, the trial court's summary judgment in favor of appellee is final for purposes of appeal.

[4] Hole and appellee are both pro se on appeal.

S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.). In a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing TEX. R. CIV. P. 166a(c)); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). "When a plaintiff moves for summary judgment, the plaintiff must show entitlement to prevail on each element of the cause of action." *Geiselman v. Cramer Fin. Group, Inc.*, 965 S.W.2d 532, 535 (Tex. App.—Houston [14th Dist.] 1997, no writ). A defendant seeking a traditional motion for summary judgment must either disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of any affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

Generally, when both parties filed competing motions for summary judgment, we review both parties' motions to determine whether the trial court erred in its decision. *Tex. Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004); *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002); *Parker v. Parker*, 131 S.W.3d 524, 530 (Tex. App.—Fort Worth 2004, pet. denied). In addition, we may reverse and render the judgment that the trial court should have rendered. *CU Lloyd's of Texas v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998).

## II.  ABSOLUTE PRIVILEGE

By his first issue, Hole contends that the trial court could not have properly concluded that absolute privilege immunity applies because there is no evidence supporting a finding that the March 7, 2013 letter "related to an ongoing judicial

3

proceeding," was made on behalf of a client, "furthered an attorney's representation of a client, or "bore a relationship to a pending or proposed litigation."

## A.    The Summary Judgment Evidence

In his motion for summary judgment, appellee claimed that the complained-of letter "was relevant to and made in contemplation of a legal proceeding." Specifically, appellee argued that the complained-of letter was sent after Hole threatened to sue appellee for allegedly filing judgment liens fraudulently. In addition, appellee argued that the complained-of letter was written on behalf of his client who had a separate claim for appellate court costs against Hole's wife, Cheryl D. Hole (the "Wansey Suit").[5] In his motion for summary judgment, appellee set out the relevant facts of the Wansey Suit as discussed below.

Cheryl sued appellee's client, Michael B. Wansey, for breach of contract and negligent hiring, training, and retention. In a jury trial, Cheryl prevailed on all of her causes of action against Wansey. Upon Wansey's appeal of the judgment, we reversed and rendered judgment dismissing Cheryl's breach of contract claim against Wansey with prejudice. However, we affirmed the judgment regarding negligence. Wansey appealed our judgment to the Texas Supreme Court, which rendered judgment for Wansey on all of Cheryl's claims.[6]

---

[5] The facts of the Wansey Suit and its appellate procedural history can be found in our previous decision of *Wansey v. Hole*, 379 S.W.3d 334, 345 (Tex. App.—Corpus Christi 2011) *affirmed in part and rev'd in part*, 379 S.W.3d 246, 248 (Tex. 2012) (per curiam) and in the Texas Supreme Court's decision *Wansey*, 379 S.W.3d at 247–248. Appellee attached both decisions to his motion for summary judgment.

[6] The Texas Supreme Court affirmed our judgment dismissing Cheryl's breach of contract claim. *See Wansey v. Hole*, 379 S.W.3d 246, 248 (Tex. 2012).

4

Appellee attached to his motion for summary judgment the Texas Supreme Court's judgment and mandate showing that on June 29, 2012 and August 17, 2012, the supreme court ordered Cheryl to pay Wansey's appellate court costs in the Wansey Suit. Appellee provided summary judgment evidence that based on the June 29, 2012 judgment, he filed an abstract-of-judgment lien in Wansey's favor "in Hidalgo County on January 14, 2013 [while another lien] was filed in Nueces County on February 8, 2013."

On March 5, 2013, Hole sent a letter to appellee stating, in pertinent part, the following:

> Yesterday I became aware that you have filed two (2) Abstracts of Judgment, one (1) in Hidalgo County and one (1) in Nueces County, asserting fraudulent liens against real property owned by my wife and myself in both counties. As I am sure you are aware, these fraudulent liens are damaging my wife's credit and impairing her and my ability to obtain a loan. Never was there any presentment of this claim for court costs made to my wife, myself or her attorney, Ms. I. Cecilia Garza.
>
> . . . .
>
> Please put your malpractice carrier on notice and immediately have the two fraudulent liens removed. Ms. Garza and I already have over $1,125 in attorney's fees that have been incurred by Cheryl D. Hole, as a result of these fraudulent liens. If we have to take steps . . . to have these liens removed by judicial action, that will only increase the attorney's fees dramatically. I will give you seven (7) days before we take steps to have these fraudulent liens judicially removed, and before I file suit against you. Please have your attorney or malpractice carrier give me a call to discuss the remaining claims.
>
> . . . .
>
> The way you have treated my wife, myself and Ms. Garza in connection with the handling of the underlying lawsuit, makes it crystal clear to me that your intent was to defraud both my wife and myself. Your letters and phone conversations with Cecilla Garza yesterday confirm this intent. Your actions and your client's actions in this case have been remarkably similar. Seven days. That is as long as I am willing to wait. However, at least I have given you the courtesy of advance notice, something you did not give us.

In the letter, Hole contested the amount that appellee claimed Cheryl owed to Wansey and claimed that appellee had violated Chapter 12 by fraudulently filing the liens. Hole copied Cheryl's attorney in the Wasney Suit, I. Cecilia Garza of the law firm Gault, Nye & Quintana, L.L.P. In response, on March 6, 2013, appellee sent a letter to Hole, copying Garza and Bill Gault, which appellee attached to his motion for summary judgment, stating, in pertinent part, that although appellee agreed that the amount may have been incorrect, the liens were not fraudulent.[7] Appellee also attached to his motion for summary judgment two releases of the judgment liens and the complained-of letter to Gault dated March 7, 2013, in which appellee stated that "as shown by the Supreme Court opinion, [Hole] has no aversion to filing suit without merit."

## B.      Applicable Law

Absolute privilege provides that communications that are made in the due course of a judicial proceeding cannot serve as the basis for a defamation action. *Krishnan v. Law Offices of Preston Henrichson, P.C.*, 83 S.W.3d 295, 302 (Tex. App.—Corpus Christi 2002, pet. denied). And, even if the statement is false and uttered or published with express malice, absolute privilege applies. *Id.* "The privilege not only extends to statements made during litigation, but also to statements made in contemplation of and preliminary to judicial proceedings." *Id.* Moreover, this privilege extends to any statement made by the parties and witnesses. *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982). The trial court determines whether an out-of-court statement is related to a proposed or

---

[7] Appellee agreed that the abstracts mistakenly listed a charge of $768, which should not have been included.

6

existing judicial proceeding as a matter of law. *Id.* "All doubt should be resolved in favor of the communication's relevancy to the proceeding." *Id.*

## C.   DISCUSSION

The summary judgment evidence shows that by letter, Hole threatened to sue appellee pursuant to Chapter 12 of the Texas Civil Practice and Remedies Code for fraudulently filing the liens. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002. The evidence shows that appellee filed the liens on behalf of his client, Wansey, who had an outstanding judgment against Cheryl from the Texas Supreme Court. Appellee sent the complained-of letter titled, "An Offer to Settle or to Engage in Settlement Negotiations Pursuant to Rule 408, Texas Rules of Evidence," to Gault, a named partner of the firm representing Cheryl in the Wansey Suit and copied Garza, Cheryl's attorney in response to Hole's letter threatening to sue appellee. In the letter, appellee offered to settle Wansey's claim for appellate court costs.[8] In addition, appellee stated that if Hole filed a lawsuit against him under Chapter 12, appellee would join the firm and its attorneys as third-party defendants.

Read in context, appellee wrote the letter for two purposes: (1) in contemplation of Hole's threatened Chapter 12 suit against him; and (2) to offer to settle Wansey's claim against Cheryl. Appellee's statement that Hole has no aversion to filing a suit without merit was made in relation to Hole's threatened Chapter 12 lawsuit, which appellee believed had no merit because: (1) the Texas Supreme Court ordered Cheryl to pay

---

[8] Specifically, appellee stated that he would "recommend to Mr. Wansey that one-half of those costs (per the Court of Appeals judgment) be offset against [any] costs now owed by Cheryl" that were incurred in the trial court. Appellee said, "If such an agreement can be reached, I can recommend to Mr. Wansey that mutual releases be signed that would include any claims by or against all of the parties and their attorneys including [Hole], me, and your firm and its partners."

7

certain costs in the Wansey Suit; and (2) appellee requested the liens based on the supreme court's judgment and mandate. In addition, appellee's letter contemplated an action against Gault's firm and partners as third-party defendants if Hole sued appellee. Moreover, the complained-of letter bore some relationship to Wansey's claim against Cheryl, and it was written in order to further appellee's representation of Wansey by offering to settle the matter with Cheryl. Resolving all doubt in favor of the complained-of letter's relevancy to Hole's Chapter 12 claim against appellee and Wansey's claim against Cheryl, we conclude that as a matter of law absolute privilege applies. *See James*, 637 S.W.2d at 916. We overrule Hole's first issue.

### III. DENIAL OF HOLE'S MOTION FOR SUMMARY JUDGMENT

By his second issue, Hole contends that the trial court erred in denying his motion for partial summary judgment. However, as explained above, because the complained-of communication was subject to absolute privilege immunity, Hole's defamation claim against appellee was barred as a matter of law. *See Randolph v. Walker*, 29 S.W.3d 271, 278 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (providing that communications subject to absolute privilege simply cannot constitute the basis of a civil action). Therefore, the trial court properly denied Hole's motion for partial summary judgment. *See Randolph*, 29 S.W.3d at 278. We overrule Hole's second issue.

### VI. CONCLUSION

We affirm the trial court's summary judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
30th day of November, 2015.

8